NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ENVIROSAFE PRODUCTS CORP., | ) ) ) |  |
| Plaintiff, | ) ) | Hon. Garrett E. Brown, Jr. |
| v. | ) ) | Civil Action No. 08-508 (GEB) |
| MONARCH INDUSTRIES, INC., | ) ) | **MEMORANDUM OPINION** |
| Defendant. | ) ) ) |  |

**BROWN, Chief Judge:**

This matter comes before the Court on the cross-motion for reconsideration (Doc. No. 42) and the motion to dismiss (Doc. No. 43) filed by Defendant Monarch Industries. For the following reasons, the Court will grant Defendant's cross-motion for reconsideration and grant partial summary judgment in favor of Defendant. The Court will deny Defendant's motion to dismiss as moot.

**I. BACKGROUND**

On January 28, 2008, Plaintiff Envirosafe Products Corporation filed the instant action against Defendant alleging four counts of breach of contract and one count of promissory estoppel. On April 14, 2010, Defendant filed a motion for summary judgment as to Count IV (breach of contract) and Count V (promissory estoppel). Both of those Counts relate to Plaintiff's allegation that it entered into an oral agreement to provide brokerage services to Defendant with respect to a construction project at a public school in New York City known as the PS/IS 210 Project. Plaintiff's principal, Stephen Lerman, had solicited the company hired as

the project coordinator for the PS/IS 210 Project, Bovis Lend Lease ("Bovis"), and originally submitted a bid for the project to Bovis on behalf of Mountaintop Cabinetry Manufacturing Company. Mountaintop later bowed out of the project, at which point Plaintiff brought the information regarding the project to Defendant and allegedly entered into the oral brokerage agreement with Defendant around that time. Plaintiff alleges that Defendant has not paid Plaintiff in accordance with that oral brokerage agreement. On December 11, 2009, then District and now Circuit Judge Joseph A. Greenaway, Jr., denied Defendant's motion for partial summary judgment. (Doc. Nos. 37, 38 ("December 11 Opinion").) Judge Greenaway concluded that the parties had not provided enough information for the Court to make a determination as to which state's law to apply to Plaintiff's claims, and that therefore genuine issues of material fact still existed. On December 14, 2010, Plaintiff filed a motion for reconsideration of Judge Greenaway's decision. (Doc. No. 39.) On January 8, 2010, Defendant filed the instant cross-motion for reconsideration. (Doc. No. 42.) That same day, Defendant filed a motion to dismiss Counts IV and V of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(c). (Doc. No. 43.) Thereafter, on February 15, 2010, Plaintiff withdrew its motion for reconsideration. (Doc. No. 44.) Defendant's cross-motion for reconsideration and motion to dismiss remain. The Court will address each in turn.

## II. DISCUSSION

### A. Cross-Motion for Reconsideration

In his December 11 Opinion, Judge Greenaway noted that "[n]either party has put before this Court evidence sufficient for it to perform a conclusive choice of law analysis" with regard to Plaintiff's claims. (December 11 Opinion at 12.) Defendant contends that New York law

2

should apply, while Plaintiff contends that Rhode Island law should apply. Judge Greenaway denied Defendant's motion for partial summary judgment because the parties had not "presented sufficient facts to indicate which state's law should govern the dispute." (December 11 Opinion at 14.) Judge Greenaway determined that because no conclusive choice of law analysis could be performed, "Defendant's motion for partial summary judgment as to Counts IV and V of the Complaint [could] only be granted if it [was] mandated under both New York and Rhode Island law." (December 11 Opinion at 14.) Concluding that summary judgment was not mandated under both states' laws, Judge Greenaway denied Defendant's motion for partial summary judgment.

Thus, Judge Greenaway's decision left the choice of law issue open as to Counts IV and V. Since that time, the parties have submitted additional briefing to the Court relevant to the choice of law inquiry. This Court concludes that there is now sufficient information for the Court to conduct a choice of law analysis and will therefore grant Defendant's cross-motion for reconsideration.

B. Summary Judgment

Having granted the cross-motion for reconsideration, the Court will now address the choice of law issue and, in turn, Defendant's motion for partial summary judgment.

*1. Choice of Law*

A federal court with diversity jurisdiction must apply the forum state's choice of law rule. *Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co.,* 960 F.2d 377, 379 (3d Cir. 1992). New Jersey has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008). In determining which state

has the most significant relationship in a contract dispute, New Jersey courts apply Section 188 of the Restatement (Second) of Conflict of Laws. *Kramer v. Ciba-Geigy Corp.*, 371 N.J. Super. 580, 599 (App. Div. 2004). Section 188 provides that the law of the state having the most significant relationship to the transaction and the parties is to control, and among the contacts to be considered are:

>  (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

With regard to the place of contracting and place of negotiation of the contract, the Court will look to the place of contracting and negotiation with regard to the PS/IS 210 Project specifically. Plaintiff argues that there was a handshake agreement taking place years before the PS/IS 210 Project that establishes the amount of the fee for Plaintiff's brokerage services. However, the alleged contract that forms the basis of Plaintiff's claims in this case was not entered into until Defendant specifically accepted Plaintiff's offer with regard to the PS/IS 210 Project. Plaintiff has conceded as much in its Letter Brief in Opposition to Defendant's cross-motion for reconsideration, in which Plaintiff points out that "[t]he agreement to take the PS/IS 210 job under those terms constituted a contract in itself, and is the contract to be enforced in this case. Because [Defendant] had complete discretion to accept or reject a job, a new agreement was essentially required each time . . . ." (Pl.'s Opp. Br. at 3.) This is also supported by the allegations in the Complaint in Counts IV and V, neither of which refer to the generalized handshake agreement. In Count IV, Plaintiff alleges that it "entered into an agreement to provide

brokerage services to [Defendant] with regard to the PS/IS 210 project." (Compl. at 5.) In Count V, Plaintiff alleges that it "entered into an agreement whereby [Defendant] promised to pay [Plaintiff] for providing brokerage services whereby [Defendant] obtained a contract for the architectural millwork on the PS/IS 210 project." (*Id.*) The Complaint makes no mention of the handshake agreement as the basis for Plaintiff's breach of contract and promissory estoppel claims; rather, the basis for Plaintiff's claims in Counts IV and V is the brokerage contract allegedly entered into specifically for the PS/IS 210 Project. Plaintiff has not identified specifically when or where Defendant and Plaintiff entered into the alleged oral brokerage agreement, and thus this factor does not favor one state's law over another. Additionally, although Lerman submits that his negotiations with Defendant took place in Rhode Island, Lerman has also testified that he met with Defendant and Bovis in New York with regard to negotiating and finalizing the contract that served as the basis for the brokerage fee allegedly owed by Defendant. (Doc. No. 23 ("Lerman Dep.") at 75:4-22; 99:5-103:19.)

With regard to the place of performance, Plaintiff's activity as a broker between Bovis and Defendant took place primarily in New York. Lerman testified that he sought out Bovis in New York to solicit and bid on the PS/IS 210 Project, which was also located in New York. (Lerman Dep. at 34:22-36:6.) Lerman also stated that he met with Bovis and Defendant in New York to discuss the scope of the work and negotiate other contract issues between the parties. (Lerman Dep. at 75:4-22; 99:5-103:19.) Additionally, Lerman testified that he visited New York and the job site of the PS/IS 210 Project numerous times, where he met with the project manager and would make introductions. (Lerman Dep. at 76:7-18.)

With regard to the location of the subject matter of the contract, it is evident that the

subject matter of the agreement was the PS/IS 210 Project, which was located in New York. The Court also notes, with regard to the final factor from Section 188, that Plaintiff is a New Jersey corporation and Defendant is a Rhode Island corporation. That factor, however, does not outweigh the strong connections the parties and this transaction have with the state of New York. The place of performance of Plaintiff's activity as a broker took place in New York. The location of the subject matter of the contract was in New York. It is unclear when or where the parties formally entered into the contract, and the negotiation of the contract appears to have taken place in both Rhode Island and to some extent in New York. Weighing all of those factors, this Court concludes that New York has the most significant relationship to the parties and the transaction. Therefore, this Court will apply New York law to Plaintiff's breach of contract and promissory estoppel claims related to the PS/IS 210 Project. The Court will now address whether summary judgment in favor of Defendant is warranted under New York law.

### 2. Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the

non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### a. Count IV - Breach of Contract

In Count IV, Plaintiff asserts a claim against Defendant for breach of contract. New York's Statute of Frauds provides, in part, that "[e]very agreement, promise or undertaking is void unless it or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: . . ."

> 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.

N.Y. Gen. Oblig. Law § 5-701(a)(10).

New York courts have recognized that this provision of the Statute of Frauds applies to the negotiation of business opportunities such as those involved in brokerage agreements. *See Freedman v. Chemical Constr. Corp.*, 372 N.E.2d 12, 16 (N.Y. 1977). As the court in *Freedman* concluded, "where . . . the intermediary's activity is so evidently that of providing 'know-how' or 'know-who', in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in an enterprise, the statute is entitled to be read both in accordance with its plain meaning, its evident purpose, and to accomplish the prevention of the mischief for which it was designed." *Freedman*, 372 N.E.2d at 16-17.

In this case, Plaintiff's activity was that of negotiating a business opportunity between

7

Bovis and Defendant as a broker and falls squarely within the language of the statute. It is undisputed that the alleged brokerage agreement between Plaintiff and Defendant is not contained in any writing. Therefore, pursuant to New York's Statute of Frauds, this Court concludes that the alleged oral brokerage agreement is void and will grant summary judgment in favor of Defendant with regard to Plaintiff's breach of contract claim in Count IV.

### b. Count V - Promissory Estoppel

In Count V, Plaintiff asserts a claim of promissory estoppel against Defendant. In New York, promissory estoppel has three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel by reason of the reliance. *Cyberchron Corp. v. Calldata Sys. Dev.*, 47 F.3d 39, 44 (2d Cir. 1995). Where a claim of promissory estoppel is asserted in an attempt to trump the Statute of Frauds, courts also require that there be an "unconscionable injury," which is an "injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild Weston Sys.*, 29 F.3d 821, 826 (2d Cir. 1994). In *Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977), the Second Circuit, applying New York law, recognized that "[t]he strongly held public policy reflected in New York's Statute of Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result." In that case, the court concluded that the loss of a fee is not the kind of injury contemplated as unconscionable, because it is "solely a result of the non-performance of a void agreement." *Id.*

In this case, Plaintiff's promissory estoppel claim seeks damages for the amount of the

lost fee under the alleged oral brokerage agreement. Plaintiff has failed to demonstrate a genuine issue of material fact regarding unconscionable injury, as Plaintiff has not alleged that it has been injured beyond merely the expectation damages from Defendant's alleged non-performance of the brokerage agreement. Therefore, this Court will grant summary judgment in favor of Defendant with regard to Plaintiff's promissory estoppel claim in Count V.

      C.  Motion to Dismiss

Because this Court will grant summary judgment on Counts IV and V of Plaintiff's Complaint in favor of Defendant, Defendant's motion to dismiss those Counts will be denied as moot.

## III. CONCLUSION

For the foregoing reasons, this Court will grant Defendant's cross-motion for reconsideration (Doc. No. 42), grant partial summary judgment in favor of Defendant, and deny Defendant's motion to dismiss (Doc. No. 43). An appropriate form of order accompanies this Memorandum Opinion.

Dated: August 12, 2010

                                                S/Garrett E. Brown, Jr.
                                         Garrett E. Brown, Jr., Chief Judge
                                         United States District Court